J-S37003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARLOS NAVEDO | : | |
| | : | |
| Appellant | : | No. 754 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 30, 2025
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001085-2024

BEFORE:   DUBOW, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED FEBRUARY 3, 2026**

Appellant, Carlos Navedo, appeals from the January 30, 2025 judgment of sentence of 35 to 70 years' incarceration entered in the Bucks County Court of Common Pleas following his jury conviction of Rape of a Child and numerous related offenses. He raises challenges to the admission of evidence under the Tender Years Hearsay Act, 42 Pa.C.S. § 5985.1, the legality of sentencing, and the discretionary aspects of sentencing. Upon review, we affirm.

The relevant factual and procedural history is as follows. When A.S. ("Child") was between the ages of 9 and 12, Appellant, who was her uncle, sexually assaulted her in his home in Bucks County, Pennsylvania. Child testified to at least five separate sexual assaults by Appellant. *See* Trial Ct. Op., 5/5/25, at 2-3 (reiterating Child's testimony describing the assaults).

_____

[*] Former Justice specially assigned to the Superior Court.

When Child was 12 years old, she first disclosed the assaults to her sister, and then to her mother and stepfather. Child later informed her school counselor, a mandated reporter who was required to contact law enforcement. In January 2023, Child met with a detective and social worker. On April 26, 2023, Child participated in an interview at the Child Advocacy Center ("CAC"). At that time, Child was not prepared to fully and openly discuss all details of the assault. Child subsequently requested an additional interview because she did not disclose everything that happened during her first interview. On January 8, 2024, Child participated in a second interview at the CAC.

On January 9, 2024, the Bristol Township Police Department arrested and charged Appellant with Rape of a Child, Statutory Sexual Assault by a Person 11 Years Older than Complainant, two counts of Involuntary Deviate Sexual Intercourse ("IDSI") with a Child, Aggravated Indecent Assault of a Child, Unlawful Contact with a Minor, Sexual Assault, Aggravated Indecent Assault without Consent, Aggravated Indecent Assault of a Complainant less than 13 Years Old, Indecent Assault of a Person less than 13 Years Old, Corruption of Minors, Disseminating Explicit Sexual Materials to a Minor, and Indecent Assault without Consent.[1]

On June 27, 2024, the Commonwealth filed an Omnibus Pre-Trial Motion seeking, *inter alia*, the admission of recordings of the Child's two CAC videos

_____

[1] 18 Pa.C.S. §§ 3121(c), 3122.1(b), 3123(b), 3125(b), 6318(a), 3124.1, 3125(a)(1), 3125(a)(7), 3126(a)(7), 6301(a)(1)(ii), 5903(c)(1), 3126(a)(1), respectively.

under the Tender Years Hearsay Act. Appellant filed an answer opposing the admission of the videos. On July 31, 2024, after a hearing, the court granted the Commonwealth's motion to admit the CAC videos.

The trial court held a jury trial on October 28, 2024 through October 30, 2024. The jury heard testimony from Child; Keri Lituma, forensic interviewer at the CAC; Detective John Jennings; Michelle Dominguez, M.D., and Lisa Cameron, L.P.C. The jury subsequently convicted Appellant of all charges.

The court deferred sentencing and ordered Appellant to undergo an evaluation by the Sexual Offender Assessment Board ("SOAB"). The SOAB produced a report on January 14, 2025, concluding that Appellant did not meet the criteria for classification as a sexually violent predator. On January 30, 2025, the court sentenced Appellant to an aggregate term of 35 to 70 years' incarceration.[2] Appellant filed a timely post-sentence motion requesting reconsideration and modification of the imposed sentence, which the court denied.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

_____

[2] Specifically, the court sentenced Appellant as follows: Count 1, Rape of a Child, 20 to 40 years' incarceration; Count 3, IDSI w/ Child, 10 to 20 years' incarceration to be served consecutive to Count 1; Count 4, IDSI w/ Child, 10 to 20 years' incarceration, to be served concurrently to Counts 1 and 3; Count 5, Aggravated Indecent Assault of a Child, 5 to 10 years' incarceration to be served consecutively to Counts 1 and 3; Count 8, Aggravated Indecent Assault without Consent, 5 to 10 years' incarceration to be served concurrently to Count 1; Count 9, Aggravated Assault of a Complainant less than 13 years of age, 5 to 10 years' incarceration to be served concurrently to Count 1. The court imposed no further penalty on the remaining counts.

Appellant raises the following issues for our review:

A. Did the trial court err in admitting [Child]'s statements pursuant to the [Tender Years Hearsay Act] because the circumstances surrounding the statements did not provide sufficient indicia of reliability?

B. Did the trial court err in imposing separate, consecutive sentences on count 1, Rape of a Child, and count 3, [IDSI], because the counts merge for sentencing purposes?

C. Did the trial court abuse its discretion in imposing consecutive sentences resulting in a manifestly excessive aggregate sentence considering the nature of offenses and total length of incarceration, and where the trial court failed to consider the character, background, or rehabilitative needs of Appellant but instead placed an inordinate focus on the nature of the offense?

Appellant's Br. at 8.

* * *

In his first issue, Appellant avers that the trial court erred when it admitted two video interviews of Child conducted at the CAC pursuant to the Tender Years Hearsay Act. *Id.*

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Tyson*, 119 A.3d 353, 357 (Pa. Super. 2015) (*en banc*) (citations omitted). "Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Commonwealth v. Strafford*, 194 A.3d 168, 173 (Pa. Super. 2018) (citation omitted).

The Tender Years Hearsay Act creates an exception to the general rule against hearsay for a statement made by a child victim who is sixteen years old or younger that describes sexual offenses. 42 Pa.C.S. § 5985.1(a). Relevant to this appeal, a court may admit a child victim's out-of-court statement for the truth of the matter asserted when (1) "the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content[,] and circumstances of the statement provide sufficient indicia of reliability;" and (2) the child testifies at the proceeding or is deemed unavailable to testify. *Id.* at § 5985.1(a)(1)(i)-(ii). Pursuant to the Tender Years Hearsay Act, a trial court must consider the totality of the circumstances when determining whether a child's out-of-court statement is trustworthy. *Commonwealth v. Lyons*, 833 A.2d 245, 253 (Pa. Super. 2003). The statute requires "indicia of reliability" which "include, *inter alia*, the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age, and the lack of a motive to fabricate." *Strafford*, 194 A.3d at 173 (citation and internal quotation marks omitted).

Appellant avers that the circumstances surrounding Child's CAC interviews lacked sufficient indicia of reliability. Appellant's Br. at 8. Appellant premises his claim on the fact that two CAC interviews took place, which is uncommon, and that the interviews contained inconsistencies, which "clearly fails to support the reliability of either." *Id.* at 10, 18-21. Appellant further argues that Child had an impaired mental state during the first CAC interview

because she repeatedly asked for food, whether she was finished, and when she could go home. *Id.* at 20. Appellant's arguments lack merit.

The trial court heard testimony from trained forensic interviewer Ms. Lituma regarding the steps that she takes to ensure the reliability of what is being reported to her in CAC interviews, including asking "developmentally sensitive" questions to prompt "open narrative," using the child's own words rather than introducing new terms, asking follow-up questions to learn sensory details or contextual details regarding disclosures of abuse, and explaining and enforcing "rules of the room," including a child's promise to tell the truth. N.T., 7/11/24, at 78-79, 84. Ms. Lituma acknowledged that Child had a second interview, which was somewhat uncommon, but not unheard of because there are protocols in place for it. Ms. Lituma testified:

> So with every child that we talk to we always leave the door open, that they are welcome to come back and talk if there's something that they didn't talk about before, and if a child would disclose to somebody else something that they didn't talk about in the interview, then it could prompt law enforcement or Children & Youth or the district attorney to request another interview. And then when that second interview does occur, we would ask the child, you know, what made you want to come back and talk about this this time or how come we didn't talk about this the first time, and we would gain some understanding from the child.

*Id.* at 81. Ms. Lituma explained that, here, Child felt uncomfortable disclosing all of the details in the first interview:

> And in this particular situation the child did disclose that she wasn't ready to talk about it the first time and that she felt awkward talking about it . . . [S]he mentioned that she was being recorded, which made her feel uncomfortable. And she mentioned

there being a man in the other room that was watching the interview, and that made her feel awkward talking about it.

*Id.* at 81. Ms. Lituma further testified that Child made more extensive disclosures in the second interview than she did in the first interview. *Id.* at 82. Detective Jennings testified and confirmed that the request for a second CAC was prompted by Child informing him that she felt "more comfortable" disclosing things that "she hadn't told us before." *Id.* at 94.

Based on the testimony of Ms. Lituma, Detective Jennings, and our review of the transcribed CAC interviews, we remain unpersuaded by Appellant's arguments that the inconsistencies in the two CAC interviews indicate that the interviews are unreliable. On the contrary, the evidence indicates that Child felt awkward and uncomfortable making a full disclosure during her first interview and subsequently felt more comfortable disclosing additional details and assaults during the second interview.

Moreover, Appellant's arguments that Child had an impaired mental state during the first CAC interview because she was hungry and wanted the interview to end is speculative at best. In its brief, the Commonwealth responds: "It is hardly surprising that a 12-year-old girl is either hungry or does not want to be somewhere, let alone that she does not want to disclose her repeated sexual assaults to several strangers. This hardly rises to the level of an 'impaired' mental state." Commonwealth's Br. at 12. We agree and, without more, Appellant's argument fails to garner relief.

Accordingly, we discern no abuse of discretion in the trial court's conclusion that the CAC interviews had sufficient indicia of reliability and its decision to admit them into evidence under the Tender Years Hearsay Act.

* * *

In his second issue, Appellant asserts that his sentence is illegal because the court should have merged his convictions for Rape of a Child and IDSI with a Child. Appellant's Br. at 21. Specifically, Appellant asserts that the Commonwealth failed to demonstrate that these two crimes arose from separate and distinct criminal acts. *Id.* at 23.

"A claim that crimes should merge for sentencing purposes raises a non-waivable challenge to the legality of the sentence; thus, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Edwards*, 256 A.3d 1130, 1136 (Pa. 2021).

The merger doctrine developed to prevent punishing a defendant more than once for one criminal act. *Commonwealth v. Davidson*, 938 A.2d 198, 217 (Pa. 2007). Merger of sentences "is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other." *Commonwealth v. Raven*, 97 A.3d 1244, 1249 (Pa. Super. 2014); *see also* 42 Pa.C.S. § 9765. "Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense." 42 Pa.C.S.§ 9765.

Relevant to this issue, Rape of a Child is defined as "sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3121(c). "Sexual intercourse" is defined, in addition to its ordinary meaning, as "intercourse *per os* or *per anus*, with some penetration however slight[.]" ***Id.*** at § 3101. IDSI with a Child is defined as "deviate sexual intercourse with a complainant who is less than 13 years of age." ***Id.*** at § 3123(b). Correspondingly, "deviate sexual intercourse" is defined as "sexual intercourse *per os* or *per anus* between human beings" and "includes penetration, however slight, of the genitals or anus of another person with a foreign object[.]" ***Id.*** at § 3101.

This Court has acknowledged that the statutory elements of IDSI with a Child and Rape of a Child are the same "where the underlying act is oral sex[.]" ***Commonwealth v. Brown***, 159 A.3d 531, 534 (Pa. Super. 2017). The only pertinent difference between the statutes is that Rape of a Child also includes sexual intercourse "in its ordinary meaning." ***Id***. (internal quotation marks omitted) (citing 18 Pa.C.S. § 3101 (definitions provision of the sexual offense portion of the crimes code)). Hence, where only a single act of "intercourse *per os* or *per anus* with a child less than 13 years of age" supports convictions for both Rape of a Child and IDSI with a Child, the convictions merge for sentencing purposes. ***Id***. However, Rape of a Child and IDSI with a Child do not merge for sentencing purposes when the convictions are predicated upon distinct and separate acts. ***See Commonwealth v. Frank***, 640 A.2d 904, 907-08 (Pa. Super. 1994) (convictions for rape and involuntary sexual

- 9 -

intercourse did not merge since the two convictions rested upon two separate acts - oral and anal sexual intercourse); *see also Commonwealth v. Hitchcock*, 565 A.2d 1159 (Pa. 1989) (rape and involuntary deviate sexual intercourse do not merge where there are separate penetrations); *see also Commonwealth v. Snyder*, 870 A.2d 336, 350 (Pa. Super. 2005) (convictions for rape and involuntary deviate sexual intercourse "do not merge for purposes of sentencing because they are supported by separate facts").

"When considering whether there is a single criminal act or multiple criminal acts, the question is not whether there was a break in the chain of criminal activity." *Commonwealth v. Martinez*, 153 A.3d 1025, 1030 (Pa. Super. 2016) (citation and quotation marks omitted). Rather, "[t]he issue is whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes." *Id.* (citation and quotation marks omitted). "In determining whether two or more convictions arose from a single criminal act for purposes of sentencing, [we] must examine the charging documents filed by the Commonwealth, including the criminal information, criminal complaint, and affidavit of probable cause." *Commonwealth v. Dove*, 301 A.3d 427, 434 (Pa. Super. 2023) (reversed on other grounds) (citation and quotation marks omitted).

Here, the charging documents indicate that the Commonwealth charged Appellant with Rape of a Child and IDSI for two separate criminal acts. The

Criminal Complaint and Criminal Information both indicate that the Commonwealth charged Appellant with Rape of a Child for "sexual intercourse" with Child and IDSI for "deviate sexual intercourse" with Child, mirroring the language in the statutes. Criminal Complaint, 1/9/24, at 3, 5; Criminal Information, 4/18/24, at 1. The Affidavit of Probable Cause further clarifies and outlines at least four separate sexual assaults including: 1) Appellant placed his penis into Child's vagina, 2) Appellant made Child put his penis into her mouth, 3) Appellant put his mouth onto Child's vagina, 4) Appellant touched intimate parts of Child's body. Criminal Complaint, 1/9/24, at 12. Viewed in their totality, the charging documents demonstrate that Appellant committed several distinct criminal acts involving both vaginal and oral sex.

Moreover, the trial court found that "[t]he evidence established that Appellant engaged in both vaginal and oral sexual intercourse with Child on multiple different occasions. Accordingly, each conviction is predicated upon a distinct and separate act." Trial Ct. Op. at 17.

Upon review, Child's CAC interviews and testimony reveal Appellant's efforts to engage in at least one instance of vaginal sex and multiple instances of oral sex to support the Rape of a Child conviction and IDSI with a Child conviction independently. Viewing the charging documents together and the record as a whole, we reject Appellant's assertion that his convictions for Rape of a Child and IDSI with a Child arose from a single criminal act. Accordingly,

they do not merge for sentencing purposes and the court did not issue an illegal sentence by imposing separate sentences for each of those convictions.

* * *

In his final issue, Appellant challenges the discretionary aspect of his sentence. Appellant argues that his sentence was excessive because the trial court imposed consecutive sentences and failed to consider Appellant's rehabilitative needs. Appellant's Br. at 34.

Challenges to the discretionary aspects of sentence are not appealable as of right. *Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b). *Id.* (citation omitted); Pa.R.A.P. 2119(f). Our review confirms that Appellant has complied with the first three requirements. Accordingly, we will consider whether his claim raises a substantial question.

An appellant "presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the code or is contrary to the fundamental norms of the sentencing process."

*Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citation and internal quotations marks omitted). "A sentencing court generally has discretion to impose multiple sentences concurrently or consecutively, and a challenge to the exercise of that discretion does not ordinarily raise a substantial question." *Commonwealth v. Horning*, 193 A.3d 411, 418 (Pa. Super. 2018) (citation omitted). Accordingly, Appellant's claim that the court abused its discretion in imposing consecutive sentences does not raise a substantial question. However, we have explained "that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Id.* (citation omitted). Accordingly, we will address these claims.

An appellate court will not disturb the sentencing court's judgment absent a manifest abuse of discretion. *Commonwealth v. Ahmad*, 961 A.2d 884, 887 (Pa. Super. 2008). To constitute an abuse of discretion, "a sentence must either exceed the statutory limits or be so manifestly excessive as to constitute an abuse of discretion." *Id.* at 887 (citation omitted). To demonstrate that the sentencing court abused its discretion, "the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa. Super. 2003) (citation omitted). "As long as the trial court's reasons demonstrate that it weighed the Sentencing Guidelines with the facts of the crime and the

defendant's character in a meaningful fashion, the court's sentence should not be disturbed." *Id*. at 1018–19 (citation omitted). Moreover, "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010).

In sentencing a defendant, a trial court should consider the following factors: "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). We defer to the sentencing court's assessment of the sentencing factors as it is "in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference." *Commonwealth v. Summers*, 245 A.3d 686, 696 (Pa. Super. 2021) (citation omitted).

With respect to sentences within the sentencing guidelines, Section 9781(c) instructs that an appellate court should affirm the sentence imposed unless it finds that "the case involves circumstances where the application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S. § 9781(c)(2). Section 9781(d) provides that this Court "shall have regard for: (1) [t]he nature and circumstances of the offense and the history and characteristics of the defendant[;] (2) [t]he opportunity of the sentencing court to observe the defendant, including any presentence investigation[;] (3) [t]he findings upon

which the sentence was based[;] (4) [t]he guidelines promulgated by the commission." *Id.* at § 9781(d).

Appellant contends that his sentence is manifestly excessive because it is the "functional equivalent of a life sentence." Appellant's Br. at 34. Appellant further argues that the trial court failed to consider his rehabilitative needs and focused, instead, on the serious nature of the crimes. *Id.* at 35. Appellant emphasizes that he is the father of eight children, the sole support for his family, and has a strong work history. *Id.* at 39. Appellant's claims warrant no relief.

During sentencing, the court emphasized Appellant's past conviction for statutory rape, his recidivism, and the fact that Appellant's family members referred to him as a "monster" for his actions against Child. N.T. Sent'g, 1/30/25, at 31-32. The trial court placed great weight on the emotional impact that Appellant's crimes had on Child and stated on the record: "this child who is obviously a beautiful, young child who has many years of her life that she will always be dealing with this. And that's something that I'm going to give you an awful lot of time to think about that, about what you did here, and what – if she's going to be in an emotional prison, I'm going to put you in prison." *Id.* at 33. In its opinion, the trial court explained everything that it considered in imposing an aggregate sentence of 35 to 70 years' incarceration:

> Specifically, we considered the facts of the case together with the nature and character of [Appellant], the sentencing guidelines, the impact [Appellant's] crimes had on his victim and the need to

protect the community, and, most importantly we considered [Appellant's] need for rehabilitation. Upon consideration of all those factors, we imposed a sentence on Counts 1, 3, 4, 5, 8, and 9 within the standard range of the Sentencing Guidelines. We used our discretion to run some of the mandatory sentences consecutive to one another, and other mandatory sentences concurrent to the others.

Trial Ct. Op. at 16 (internal citations omitted).

Following our review, we reject Appellant's claim, which essentially asks this Court to reweigh the sentencing factors rather than defer to the trial court as required by our standard of review. Moreover, we are unpersuaded by Appellant's arguments that his standard range sentence is manifestly excessive. This case does not involve circumstances where the application of the guidelines is "clearly unreasonable" pursuant to Section 9781(c)(2). On the contrary, Appellant was convicted of Rape of a Child and the court imposed a standard range sentence of 20 to 40 years' incarceration. Appellant was convicted of 12 additional counts of sexual assault against a child, and the court imposed standard range sentences, only using its discretion to impose consecutive sentences for one count of IDSI with a Child and Aggravated Indecent Assault of a Child for an aggregate sentence of 35 to 70 years' incarceration. Upon review, we discern no abuse of discretion.

In conclusion, the trial court did not abuse its discretion in applying the Tender Years Hearsay Act, did not impose an illegal sentence, and did not err in exercising its discretion to impose an aggregate sentence of 35 to 70 years' incarceration.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 2/3/2026